UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **REBECCA LAMPER ET AL.** | **:** | **CASE NO.  2:21-CV-01141** |
| **VERSUS** | **:** | **JUDGE JAMES D. CAIN, JR.** |
| **U.S. SPECIALTY INSURANCE CO** | **:** | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a Motion to File Plaintiff's First Amended Petition and Motion for Remand.  Doc. 40.  Plaintiff seeks to add two non-diverse defendants which, plaintiff suggests, would require remand of this diversity matter.  Defendants, MS Amlin Corporate Member Limited, Subscribing to Policy L19506-5-UL5-191001-5 ("Amlin") and Ace American Insurance Company ("Ace") oppose.  Docs. 50-51.  The time to file a reply brief has passed, making this matter ready for review.  The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the reasons that follow, **IT IS RECOMMENDED** that the motion to file first amended petition be **DENIED** and the motion to remand be **DENIED**.

### I.
#### Background

This matter arises out of an automobile accident that occurred on September 22, 2020.  Plaintiff Rebecca Lamper ("Lamper") was driving southbound on U.S. Highway 171, when her car collided with a trailer attached to a truck driven by defendant Jose Veracruz ("Veracruz").  Doc. 1, att. 2, p. 1-2.  Lamper alleges that Veracruz caused the truck and trailer he was driving to

completely block the roadway while he attempted to back into a private driveway. *Id.* The original petition identifies Veracruz as the "sole and proximate cause" of the collision, and names as co-defendants his employer and two insurers. *Id.*

Lamper filed suit in the 36th Judicial District Court for the Parish of Beauregard on March 22, 2021. *Id.* Defendants Ace and Transport Indiana, LLC (collectively, "removing defendants")[1] timely removed the matter to this court on April 29, 2021. Doc. 1. Defendants assert this this court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship[2] and the petition alleges that Lamper's damages exceed the threshold for federal court diversity jurisdiction. *Id.*, p. 2-3 (citing doc. 1, att. 2, ¶ 7).

On May 14, 2021, Ace filed an answer and affirmative defenses in this matter. Doc. 9. Relevant to this motion, Ace's Fourth Affirmative Defense reads, "In the alternative, the causes in fact of the accident complained of were due to the acts of third parties over whom Defendant had no control, and therefore, any fault attributable to these third parties bars or proportionately reduces any fault case against the Defendant or Jose Veracruz, which fault is denied." *Id.*, p. 4. Using similar "boilerplate" language, Ace's Fifth Affirmative Defense reads, "Plaintiff's damages, if any were the result of intervening and superseding events, factors or occurrences and conditions over which Defendant had no control and for which Defendant cannot be held liable. Any claims against Defendant are barred, in whole or in part, by these intervening and/or superseding causes." *Id.*

In her Motion to File Plaintiff's First Amended Petition and Motion for Remand [doc. 40], Lamper seeks leave to amend her petition to add new defendants Candice Wilcox and Justin Brown, both Louisiana residents. Doc. 41, p. 1. Lamper alleges that, at the time of the accident,

---

[1] In their notice of removal, defendants assert that Ace American Insurance Company was incorrectly named as U.S. Specialty Insurance, and that Transport Indiana, LLC was incorrectly named as Indiana Transport of Hammond, LLC.
[2]

Wilcox and Brown were acting as "flaggers," who were using their cell phone lights in an attempt to alert oncoming traffic that Veracruz had blocked the roadway and that they may bear some fault for the accident. *Id.* Lamper asserts that she is not adding these new non-diverse defendants to defeat diversity jurisdiction, but rather "due to the risk of their being found party [sic] at fault for this accident" because Ace's answer "raised the fault of third persons as a defense, as well as pleading that this accident was caused by intervening and superseding events or factors." Doc. 41. In opposition, defendants Ace and Amlin argue that the amendment cannot withstand the close scrutiny applied to post-removal amendments that seek to add non-diverse defendants, and that leave to amend should be denied.

## II.
## APPLICABLE LAW

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). When confronted with such an amendment, the court should "use its discretion in deciding whether to allow that party to be added." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Normally, when a court assesses a motion for leave to amend a pleading, the Federal Rules of Civil Procedure require that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But when a plaintiff seeks to add a non-diverse defendant after removal, thereby destroying diversity and requiring remand, the court must consider the "original defendant's interest in the choice of forum" and "should scrutinize that amendment more closely than an ordinary amendment." *Hensgens*, 833 F.2d at 1182. The ultimate question is whether "justice requires" the amendment. *Id.*

In exercising its discretion to answer that question, the court is required to "consider a number of factors to balance the defendant's interests in maintaining the federal forum with the

competing interests of not having parallel lawsuits." *Id.* The *Hengsens* factors are 1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, 2) whether plaintiff has been dilatory in asking for amendment, 3) whether plaintiff will be significantly injured if amendment is not allowed, and 4) any other factors bearing on the equities. *Id.*

### III.
#### ANALYSIS

**A. Citizenship of the parties and jurisdiction of the court**

Under 28 U.S.C. § 1332, this federal court has jurisdiction over civil actions between citizens of different states, where the amount in controversy exceeds $75,000. Although no party explicitly challenges the diversity of the current parties, courts have an "independent obligation to assess our own jurisdiction before exercising the judicial power of the United States." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019). "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194 (2010).

The allegations of citizenship in the Notice of Removal are for the most part straightforward, adequate, and unchallenged. Removing defendants allege that Plaintiff Lamper is a citizen of Louisiana, based on the allegation that she resides in Calcasieu Parish, Louisiana. Doc, 1, p. 3 (citing doc. 1, att. 2, p. 1). Removing defendants allege that defendant Veracruz domiciled in Texas, based on the allegation that he is a resident of Rockwall County, and therefore a citizen of Texas. *Id.*, p. 4. Veracruz's employer (which Lamper incorrectly named as Indiana Transport of Hammond, LLC) is Transport Indiana, LLC. Doc. 1, p. 2, ¶ II. A limited liability company's citizenship is "is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). According to the affidavit attached to the Notice of Removal, the sole member of Transport Indiana, LLC is Patrick Industries, Inc., an

Indiana corporation, incorporated in Indiana, with its principal place of business in Indiana. Doc. 1, att. 3. Transport Indiana, LLC is therefore a citizen of Indiana. Defendant Ace American Insurance Company (incorrectly named as U.S. Specialty Insurance) is a foreign corporation domiciled in Pennsylvania with its principal place of business in Pennsylvania. Doc. 1, p. 4 (referencing public records).

Determining the citizenship of the final defendant is less straightforward. Lamper originally named Lloyd's of London as a defendant asserting that it is a "foreign insurance company." [3] Doc. 1, att. 2. The Notice of Removal does not address the citizenship of the Lloyd's defendant(s), other than to repeat the allegation that it is a "foreign insurance company with its principal place of business in London, England." Doc. 1, p. 4. Lamper later substituted "Certain Underwriters at Lloyd's, London Subscribing to Policy Number L19506-Ul5-191001-5" for original defendant Lloyd's of London. Doc. 5. Amlin appeared via an unopposed motion for extension of time to respond to the allegations against the Lloyd's underwriters, stating that it was "improperly named as Certain Underwriters at Lloyd's London Subscribing to Policy Number L19506-Ul5-191001-5." Doc. 12. Amlin is the lead underwriter on the relevant policy. Doc. 39.

It is unclear whether Amlin is a corporation or an unincorporated entity.[4] Based on the designation "Limited" at the end of its name and its assertion that it is organized under the laws of the United Kingdom, Amlin appears to be a U.K. limited company. "'[United Kingdom] private limited companies are treated as corporations for the purposes of diversity subject-matter jurisdiction.'" *Green Coast Enters., LLC v. Certain Underwriters at Lloyd's*, No. CV 22-973,

---

[3] "Lloyds of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "The members or investors who collectively make up Lloyd's are called 'Names' and they are the individuals and corporations who finance the insurance market and ultimately insure risks." *Id.* at 858.

[4] Amlin's full name is MS Amlin Corporate Member Limited, and its corporate disclosure statement does not explicitly indicate whether it is a corporation or an unincorporated association. Doc. 39.

- 5 -

2022 WL 2208206, at *5 (E.D. La. June 21, 2022)(quoting *SHLD, LLC v. Hall*, No. 15-6225, 2015 WL 5772261, at *2 (S.D.N.Y. Sept. 29, 2015)(alteration original). As such, its citizenship is determined by its place of incorporation and its principal place of business, usually a headquarters that functions as the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192, (2010). Amlin's corporate disclosure statement asserts that

> MS Amlin exists under the laws of the United Kingdom, with its principal place of business located in the United Kingdom. MS Amlin is wholly-owned by MS Amlin plc, a company organized under the laws of England and Wales, which is wholly owned by Mitsui Sumitomo Insurance Co. Ltd. of Japan.

Based on these statements, Amlin appears to be a citizen of the United Kingdom. Because none of the named defendants are Louisiana citizens, the court is satisfied that there is currently complete diversity of citizenship among the parties, providing this court with subject matter jurisdiction under 28 U.S.C. § 1332.

### B. The *Hengsens* factors

#### 1. The extent to which the purpose of the amendment is to defeat federal jurisdiction

The first *Hensgens* factor considers "the extent to which the purpose of the amendment is to defeat federal jurisdiction." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Lamper argues that the purpose of the amendment is to protect herself against the possibility of defendants raising an "empty chair" defense, in which some percentage of fault could be assigned to the proposed defendants, compromising Lamper's chances of full recovery by reducing her recovery by the percentage of fault attributable to those third parties. Doc. 41, att. 3. Opposing, defendants assert that Lamper knew the identities of the flaggers well before removal, and Lamper makes no argument to the contrary. Doc. 51, p. 7. Defendants suggest that the court should presume the purpose of the amendment is to destroy diversity, where the new defendants were

known to plaintiff before removal. *Id.*, p. 6 (citing *Johnson v. Faniel*, No. 6:17-cv-0571, 2020 WL 814186 at *3 (W.D. La. Feb. 18, 2020)).

In considering this factor, it may be relevant that amended allegations are "not aimed at the non-diverse defendants individually, but at the defendants collectively," *G & C Land v. Farmland Mgmt. Servs.*, 587 F. App'x 99, 103 (5th Cir. 2014). The court should also ask whether plaintiff was "aware of the identities and activities of the non-diverse defendants before it filed suit in state court and only chose to add them as parties to the suit after the proceedings were removed to federal court [ . . . ]." *Id.*, *see also In re Norplant Contraceptive Prod. Liab. Litig.*, 898 F. Supp. 429, 431 (E.D. Tex. 1995). This may be relevant because "courts have viewed the later attempt to add the nondiverse defendant as nothing more than an attempt to destroy diversity." *Norplant*, 898 F. Supp. at 431. In an unreported case cited by Ace, the court framed this reasoning as a presumption, noting that "the presumption must be that plaintiff seeks to destroy diversity" because "there has been no suggestion that the proposed defendants were unknown to him." *Johnson*, 2020 WL 814186 at *3.

Plaintiff cites to jurisprudence in which courts allowed amendment to add a non-diverse defendant (requiring remand) even though plaintiff knew of the non-diverse defendant's identity before filing suit. *See, e.g.*, *Simien v. Royal Freight, LP*, No. CV 6:21-3135, 2021 WL 5481327, at *3 (W.D. La. Oct. 20, 2021), *report and recommendation adopted*, 2021 WL 5451513; *Staten v. Guardiola*, No. 19-CV-0143, 2019 WL 2396956, at *4 (W.D. La. Apr. 15, 2019), *report and recommendation adopted*, 2019 WL 2399741; *Mallery v. Becker*, No. 13-CV-2790, 2014 WL 60327, at *4 (W.D. La. Jan. 7, 2014). These cases are distinguishable from the case at bar because

the plaintiffs were determined to have a good faith reason for not initially suing the non-diverse defendant.[5]

Here, by contrast, we conclude that the most compelling purpose for the amendment is to defeat federal diversity jurisdiction by adding non-diverse defendants. *See e.g.*, *Norplant*, 898 F. Supp. at 432 (reasoning that plaintiffs could have easily included the defendant in the original petition, but by waiting until after removal to request amendment, plaintiffs give the appearance of requesting amendment "primarily for the purpose of defeating federal jurisdiction"). Lamper does not contest defendants' assertion that the identities of the "flaggers" have been known to Lamper since before removal, nor does Lamper offer a compelling reason for not initially suing the flaggers. The court is not convinced that the generic language of Ace's affirmative defenses could have significantly altered Lamper's assessment as to who could be at fault for this accident. This conclusion is strengthened by the fact that Lamper adds no new allegations against the "flaggers" in her proposed amendment, instead including them as new targets of the allegations originally aimed solely at Veracruz. *See G & C Land v. Farmland Mgmt. Servs.*, 587 F. App'x 99, 103 (5th Cir. 2014).

### 2. Whether plaintiff has been dilatory in asking for amendment

The next *Hensgens* factor considers "[w]hether plaintiff has been dilatory in asking for amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

---

[5] *Simien*, *Staten*, and *Mallery* each involved a vehicular accident in which plaintiff, a passenger in one of the vehicles, did not initially sue the driver of her own vehicle. *Simien*, 2021 WL 5481327; *Staten*, 2019 WL 2396956; *Mallery*, 2014 WL 60327. The plaintiffs in each of these cases sought leave to amend to add the driver and/or his insurer shortly after defendants filed responsive pleadings raising that driver's fault as an affirmative defense. After considering plaintiffs' explanations for not initially suing the drivers of their own vehicles (in one case, the plaintiff's husband), the court in each of these cases determined that the amendment was "motivated by a good faith effort to preserve her right to a full recovery of compensation for the damages she suffered in the accident," rather than an attempt to defeat federal jurisdiction. *Staten v. Guardiola*, 2019 WL 2396956, at *4.

A motion to amend filed nineteen days after a third party's answer is not dilatory. *Staten*, 2019 WL 2396956, at *2. A motion to amend filed two months after the original petition is "not necessarily dilatory." *Norplant*, 898 F. Supp. at 432. A delay of more than two years after the complaint is considered dilatory where the defendants were known to the plaintiff at the time he filed suit. *Johnson v. Faniel*, No. 6:17-cv-0571, 2020 WL 814186 at *4 (W.D. La. Feb. 18, 2020).

Lamper contends that she has not been dilatory in seeking this amendment because Veracruz was not served until January 4, 2022, and because discovery is in its infancy. Doc. 41, p. 2. Courts tend to look, however, at the time that has passed between the original petition and the amendment, or the amount of time between the removal and the amendment. *Neely v. Scottdale Ins. Co.*, No. 14-48, 2014 WL 1572441 at *5 (E.D. La. Apr. 17, 2014). In this case, Lamper filed the motion to amend on March 31, 2022, approximately one year after first filing suit, eleven months after removal [doc. 1], and over ten months after Ace filed its answer and affirmative defenses [doc. 9]. The court therefore considers the amendment dilatory.

### 3. Whether plaintiff will be significantly injured if amendment is not allowed and other equities

The third *Hensgens* factor considers "whether plaintiff will be significantly injured if amendment is not allowed." *Hensgens*, 833 F.2d at 1182. In assessing this factor courts have asked is whether "present Defendant would be unable to satisfy a future judgment." *Norplant*, 898 F. Supp. at 432. Lamper's motion hints at the possibility of this sort of prejudice because "the insurers have and will argue that Mr. Veracruz has no insurance coverage for this accident." Doc. 41, p. 3. This merely suggests that insurer defendants have viable defenses to Lamper's claims, not that they (or Veracruz) are unable to satisfy a judgment. There is no suggestion that the presence or absence would-be "flagger" defendants will materially alter Lamper's ability to collect on a judgment.

Another potential source of prejudice that Lamper argues is relevant here is the possibility that "the defendants will be able to point to an empty chair at trial and ask the jury to assign a percentage of fault to that person, who is not participating in the trial, and reduce Plaintiff's recovery by that percentage." *Staten*, 2019 WL 2396956, at *4. The *Staten* court found that "Plaintiff will face ***realistic prejudice***, given the specific assertion of comparative fault, if Grayson is not added as a defendant." *Id.* at *5 (emphasis added). In the *Staten* case, Grayson was the driver of the vehicle in which plaintiff had been riding when she was injured in an automobile accident, and the court foresaw the potential for "realistic prejudice" if the case were to go to trial without Grayson as a party. *Id.*

It is easy to imagine that a fact finder might assign a large percentage of fault to a driver who is not "there to defend the allegations against him[,]" where that driver was operating one of the two cars involved in a collision. *See, e.g., Simien*, 2021 WL 5481327, at *4. It is less easy to imagine similar prejudice from not allowing Lamper to amend her allegations to add claims against the "flaggers" who were attempting to alert oncoming traffic to the possibility of a collision. We conclude that plaintiff will not face a realistic possibility of prejudice if the flaggers are excluded as parties here.

### 4. Any other factors

The final factor asks the court to consider "any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182. The court finds that "no other equities present in this case militate toward granting Plaintiff[] leave to amend [ . . . ]." *Norplant*, 898 F. Supp. at 432.

## IV.
### CONCLUSION

**IT IS RECOMMENDED** that the motion to file first amended petition be **DENIED** and the motion to remand be **DENIED.**

Under the provisions of 28 U.S.C. §636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 1st day of September, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE