**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **REBECCA LAMPER** | **CASE NO. 2:21-CV-01141** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **U S SPECIALTY INSURANCE CO** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM RULING

Before the court is a Motion for Default Judgment filed by plaintiff against defendants Jose Veracruz and Quality Operating Company d/b/a Bob's Containers ("QOC"). Doc. 154. The motion is regarded as unopposed.

## I. BACKGROUND

This suit arises from a motor vehicle accident that occurred on U.S. Highway 171 in Beauregard Parish on September 22, 2020, at approximately 8:30 pm. Doc. 102. Defendant Veracruz, acting in the course and scope of his employment with QOC, was backing a trailer into a private drive across the highway, which he had completely blocked with his vehicle. *Id.* at ¶ 2. Veracruz also failed to use road flares, signs, or warning lights. *Id.* at ¶ 3. As a result Lamper, who was traveling down the highway, crashed into the side of Veracruz's vehicle and sustained injuries. *Id.* at ¶¶ 2–3.

Plaintiff filed suit in state court on March 22, 2021, raising negligence claims. She originally named Indiana Transport of Hammond, LLC ("Indiana Transport") as Veracruz's employer as well as its insurer. Doc. 1, att. 2. The suit was removed to this court

on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. By her second amended complaint, plaintiff also named Progressive Paloverde Insurance Company as her uninsured/underinsured motorist coverage carrier. Doc. 58.

Plaintiff dismissed her claims against Indiana Transport, which maintained that Veracruz was not its employee, and its insurer as well as Progressive. Docs. 77, 89. She then filed an amended complaint naming QOC as Veracruz's employer. Doc. 102. The court set the matter for jury trial on July 20, 2026. Doc. 123. Plaintiff reached a settlement with QOC's insurer, MS Amlin Corporate Member Ltd. Subscribing to Policy L19506-5-UL5-191001-5, and dismissed her claims against that entity on October 1, 2025. Docs. 123, 129.

Veracruz, who was first served on January 4, 2022, has never made an appearance in this suit. Doc. 31. The clerk entered a default against him on January 25, 2023. Doc. 75. QOC was initially represented by counsel, who filed an answer and appeared at the scheduling conference. Docs. 118, 123. On December 17, 2025, however, QOC's counsel filed a motion to withdraw due to nonpayment of invoices for fees and costs. Doc. 130. The magistrate judge held a telephone conference on the motion on March 9, 2026, with Robert Balderas, majority owner of QOC, participating. Doc. 135. At the conclusion of the conference the magistrate judge permitted QOC's counsel to withdraw, remaining enrolled only as agent for service, and ordered that QOC retain new counsel within 30 days. Doc. 135. The magistrate judge also advised that failure by QOC to engage new counsel as directed could result in adverse action by the court, including a recommendation that

QOC's answers and defenses be stricken or that a default judgment be entered against QOC for failing to abide by the court's order and prosecute its defense. Doc. 136.

Based on the unrepresented status of the two remaining defendants, the plaintiff moved to convert the matter to a magistrate bench trial. Doc. 137. The court granted the motion to the extent that it permitted plaintiff to withdraw her jury demand, but left the matter scheduled for a bench trial before the undersigned on July 20, 2026. Doc. 142. A pretrial conference was held on July 1, 2026. Doc. 147. QOC did not appear and had still made no motion to substitute counsel. *Id.* The court thus ordered that trial would proceed as scheduled and that QOC's failure to appear with new counsel would be taken as grounds to strike its answers and defenses and enter a default against it. *Id.*

At trial no counsel appeared to enroll on QOC's behalf. Doc. 151. The court granted plaintiff's motion to strike QOC's answer and defenses, entered a default against QOC, and set a deadline for plaintiff to file a motion for default judgment. *Id.*; doc. 155. Plaintiff has now filed her motion, seeking a default judgment as to Veracruz and QOC. Doc. 154. The court has received no response from any defendant.

## II.
## LAW & APPLICATION

### A. Governing Law

There is a three-step process for securing a default judgment under Federal Rule of Civil Procedure 55. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). The movant then establishes the default "by affidavit or

otherwise." *Id.* After the clerk has entered a default, the movant may apply for a default judgment. *Id.* at 55(b).

"Default judgments are a drastic remedy, not favored by the Federal Rules" and are available "only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984). In determining whether to enter a default judgment, courts in the Fifth Circuit consider: "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (Mazzant, J.) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). A court may conduct hearings when it needs to "establish the truth of any allegation by evidence . . . or . . . investigate any other matter." *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)(C)).

## B. Application

### 1. Procedural issues

In determining whether a default judgment is procedurally warranted, the court considers:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or

> excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

When a corporate entity previously represented by counsel becomes unrepresented and fails to retain new counsel against the orders of the court, the court may strike that defendant's answer and deem the allegations of the complaint admitted. *Jurek v. Federal Hockey LLC*, 2025 WL 1874981 at *3 (W.D. La. June 19, 2025) (citing *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984)). This is part of the court's inherent power to control the cases and parties before it. *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 332 (5th Cir. 2011). Because striking a pleading is an extreme sanction, it should only be used when the court finds clear and convincing proof of bad faith or willful conduct. *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014).

QOC's principal attended the March 2026 teleconference in which the magistrate judge ordered that the company retain new counsel within 30 days. Since that time, it has failed to do so despite multiple court orders reminding it of its obligation. QOC had notice of these orders through former counsel, which remained enrolled in this matter as an agent of service. QOC's failure to obey or otherwise participate has prevented the court from bringing this case, which was filed over five years ago, to a conclusion. QOC's willful conduct justifies the striking of its answer and affirmative defenses.

Because Veracruz filed no responsive pleadings and QOC's answer and affirmative defenses have been stricken, plaintiff's well-pleaded allegations are deemed admitted and there are no material issues of fact. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bk.*, 515

F.2d 1200, 1206 (5th Cir. 1975). Additionally, the grounds for default have been clearly established based on the failure of these defendants to participate and plaintiff is harmed by the continued delays in her case. *Champion v. Phaselink Util. Solutions, LLC*, 2022 WL 3693461, at *3 (W.D. Tex. Aug. 24, 2022) (citing *United States v. Fincanon*, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009)). There is nothing in the record to suggest that the default is the result of a good faith mistake or excusable neglect. The clear basis for a default and the failure to cure it "mitigate[] the harshness of a default judgment." *J&J Sports Prods., Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F.Supp.3d 809, 814 (N.D. Tex. 2015) (internal quotations omitted). Given these circumstances, the court cannot find any grounds on which it would later feel obligated to set aside the default. *Montoya Garcia v. Overnight Cleanse, LLC*, 2021 WL 902494, at *3 (N.D. Tex. Jan. 22, 2021). Accordingly, plaintiff has satisfied the procedural prerequisites for a default judgment.

**2. Merits of allegations**

At the second step courts assume that a defaulted defendant admits all well-pleaded facts in the plaintiff's complaint. *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206. However, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* To this end, the court "draw[s] meaning from the case law on Rule 8" and requires only that factual allegations in the complaint "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Montoya Garcia*, 2021 WL 902494 at *4 (quoting *Wooten*, 788 F.3d at 497).

Plaintiff has alleged that Veracruz, acting in the course and scope of his employment with QOC, negligently caused the accident by backing across a roadway at 8:30 pm in late September without the use of road flares, signs, or warning lights. Doc. 102, ¶¶ 2–4. Louisiana courts determine liability for negligence based on a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Dev.*, 916 So.2d 87, 101 (La. 2005). Through this test the plaintiff must show all of the following:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)).

Under Louisiana law, "[a] motorist is charged with the duty of seeing an obstruction in his lane of travel when by the use of ordinary care he could have observed it in time to avoid a collision." *Landry v. Meligan*, 245 So.2d 782, 784 (La. Ct. App. 3d Cir. 1971). In cases where the motorist is found free from negligence in failing to see the obstruction, "there are peculiar and unusual circumstances," including those lending to poor visibility. *Sutton v. Travelers Indem. Co.*, 210 So.2d 186, 189 (La. Ct. App. 2d Cir. 1968).

Louisiana law also provides:

> Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall

> be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.

La. R.S. 32:141(A). The complaint does not allege whether Veracruz's vehicle was stopped or left standing at the time of the accident, however. Accordingly, the court must evaluate this case under ordinary principles of reasonable care.

Plaintiff has alleged that the accident occurred at approximately 8:30 pm on September 22, 2020, which would be past sunset. Veracruz "was in the process of backing a trailer into a private drive" and had "completely block[ed] the roadway, U.S. Hwy 171," as a result. Doc. 102, ¶ 2. The court can readily determine that Veracruz's actions would have created more than a momentary obstruction in the roadway and that he therefore had a duty to other motorists, given the low visibility, to provide some type of warning. At the same time, plaintiff likely had no opportunity to avoid the accident in the exercise of reasonable care. She has submitted photographs of the accident scene, showing that (1) the stretch of road is poorly lit, (2) Veracruz's truck is dark and only minimally illuminated, and (3) the truck stretched across both lanes of traffic. Doc. 154, att. 3. The lack of daylight would have prevented plaintiff from seeing the obstruction in time to brake, and Veracruz's decision to block the entire highway prevented her from changing lanes to get around his vehicle. Accordingly, Veracruz's breach was the sole cause in fact and legal cause of the accident. He is therefore liable for plaintiff's resulting injuries. Because he was acting in the course and scope of his employment with QOC, QOC is jointly liable under the doctrine of *respondeat superior*. La. Civ. Code art. 2320; *see, e.g.*, *Bolinger v. Williams Bros.*, 134 So.3d 356, 358 (La. Ct. App. 2d Cir. 1931).

### 3. Award

#### a. Procedural Issues

A defendant's default only concedes the truth of the complaint's factual allegations on liability—not damages. *J&J Sports Prods., Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F.Supp.3d 809, 816 (N.D. Tex. 2015) (citing *Jackson v. FIE Corp.*, 302 F.3d 151, 524-25 (5th Cir. 2002)). The plaintiff has the burden of providing an evidentiary basis for the damages sought. *Broadcast Music, Inc. v. Bostock Billiards & Bar Assoc.*, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013).

Federal Rule of Civil Procedure 55(b)(2) provides that the district court "may conduct" an evidentiary hearing to, inter alia, "determine the amount of damages." Under the rule's plain language, "[c]ourts are afforded significant discretion when determining the need for a hearing on damages." *Mey v. Castle Law Group, PC*, 2022 WL 3108034, at *6 (N.D. W.Va. Jul. 5, 2022). When a default judgment arises "after protected litigation . . . the court's familiarity with the case may supplant the need for a hearing" even though damages cannot be fixed with mathematical certainty. *Boswell v. Gumbaytay*, 2009 WL 1515912, at *8 (M.D. Ala. Jun. 1, 2009); *see James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (affirming award of punitive damages on default judgment without a hearing, because of district court's "long and close familiarity" with the issues); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2nd Cir. 1991) ("In view of the long and tortuous history of these proceedings," district court could adequately determine damages on default judgment from affidavits and documentary evidence).

This suit is one of the longest-pending on the undersigned's docket. The court has received a detailed affidavit from plaintiff attesting to her damages as well as medical records and photographs of the accident scene. No party has opposed plaintiff's claimed damages. Accordingly, a hearing would only allow for examination of plaintiff and oral argument by her counsel. The court finds no need for either based on the record before it and will determine damages without a hearing.

Finally, the contents of the prior settlements in this case have not been revealed to the court. None of the former defendants has opposed this motion for default judgment or otherwise suggested that defaulting defendants are entitled to an offset based on a settlement. The court will therefore enter a default judgment against Jose Veracruz and Quality Operating Containers, LLC, for the entire amount of plaintiff's damages.

**b. Quantum**

In a tort case, the plaintiff generally has the burden of proving each element of her claim—including causation of damages—by a preponderance of the evidence. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La. 1993). A plaintiff may recover for past and future medical expenses caused by the defendant's tortious conduct. *Menard v. Lafayette Ins. Co.*, 31 So.3d 996, 1006 (La. 2010). The plaintiff must establish, however, that she "incurred past medical expenses in good faith as a result of [her] injury and future medical expenses will more probably than not be incurred." *Id.* The factfinder is given great deference in its assessment of quantum for both general and special damages. *Guillory v. Lee*, 116 So.3d 1104, 1116 (La. 2009). Where the finding is based on determinations relating to the credibility of witnesses, the award can only be overturned on a showing of manifest error.

*Jones v. Bravata*, 980 So.3d 226, 233 (La. Ct. App. 1st Cir. 2019) (citing *Adams v. Rhodia, Inc.*, 983 So.2d 798, 806 (La. 2008)).

Plaintiff was approximately 24 years old at the time of the accident. *See* doc. 154, att. 4. She submits an affidavit describing injuries she received, including a femur fracture, mesenteric hematoma, concussion, and multiple abrasions. Doc. 154, att. 7, ¶ 3. She underwent extensive surgery to repair her fractured femur. *Id.* at ¶ 4. After the surgery she was unable to return home because she required round-the-clock care. *Id.* She was unable to bathe herself, use the bathroom without assistance, drive, or sleep comfortably. *Id.* She had to relearn how to walk in physical therapy and recently discovered she has developed a significant amount of scar tissue from the surgery, which causes pain in her knee and will likely require another surgery. *Id.* at ¶ 5. She continues to experience pain in her leg as well as neuropathy in her right heel due to a laceration sustained in the accident. *Id.* at ¶ 4.

The accident has also had a severe emotional impact on plaintiff. She works as an EMT and experiences flashbacks and panic attacks after responding to car accident scenes. *Id.* at ¶ 8. She also experienced survivor's guilt, wondering why she survived her crash when she has seen others lose their lives in similar circumstances. *Id.* at ¶ 9. She underwent several months of therapy to treat this condition, after checking herself in for psychiatric treatment in March 2021. *Id.* Nearly six years after the accident, she still experiences physical and emotional pain and limitations as a result of defendants' negligence. She submits medical records from Lake Charles Memorial Hospital, where she was treated in the immediate aftermath of the accident, and Christus St. Patrick Hospital, where she

sought psychiatric treatment relating to her emotional trauma in March 2021, to support her claims. Doc. 154, atts. 3 & 4.

For past medical expenses, she submits bills totaling $86,019.48. *See* doc. 154, att. 6. The court finds that these expenses are all reasonably incurred and for treatments relating to the physical and emotional injuries she sustained in the accident. The full amount will thus be awarded as special damages. Plaintiff makes no claim for future medical expenses or past or future lost wages.

As for general damages, plaintiff asserts that an award of $125,000.00 to $225,000.00 is justified. In support she cites *Burtner v. Lafayette Parish Consolidated Government*, in which the appellate court increased the trial court's general damages award of $40,000.00 to $125,000.00. 176 So.3d 1056 (La. Ct. App. 3d Cir. 2015).[1] Adjusted for inflation, the increased award is now $176,415.58. *See* CPI Inflation Calculator, *available at* https://www.bls.gov/data/inflation_calculator.htm (accessed August 20, 2026). There the plaintiff suffered a complex tibia and fibula fracture, requiring three surgeries and medical expenses of $67,072.12. In increasing the award, the court took notice of *Aymami v. St. Tammany Parish Hospital Service District No. 1*, 145 So.3d 439 (La. Ct. App. 1st Cir. 2014) (awarding $100,000.00 in general damages for displaced tibia and fibula fractures) and *Couvillion v. Shelter Mutual Insurance Co.*, 672 So.2d 277 (La. Ct. App. 1st Cir. 1996) ($150,000.00 in general damages for leg injuries, including surgical repair of

[1] Plaintiff also cites *Guillory v. Avondale Shipyards, Inc.*, 448 So.2d 1281 (La. 1984), affirming a jury award of $250,000.00 for multiple fractures and other injuries to a motorcycle crash victim. In that case, however, plaintiff was disfigured by burns as a result of the accident. There was also significantly more testimony as to the pain she experienced through multiple surgical procedures, including skin grafts, and debridement. Accordingly, the court does not regard the inflation-adjusted award in that matter has relevant to this case.

tibia and fibula fracture) to determine that $125,000.00 ($176,415.58 in July 2026) was the minimum acceptable award. *Id.* at 1064.

The court agrees that *Burtner* provides useful guidance and supports a higher award in this case. Mr. Burtner underwent a second surgery and testified that he continued to experience pain for two years, requiring him to limit his daily activities. 176 So.3d at 1063–64. Ms. Lamper, on the other hand, continues to experience pain and limitations six years after the accident. She has also described, and sought treatment for, the emotional impacts of the accident. Her mental injuries are worsened by her noble work as a first responder. The court believes that an award of $250,000.00 is justified for her past and future pain, suffering, and loss of enjoyment of life. Plaintiff's general and special damages thus total **$336,019.48**. Costs will also be taxed once a bill is submitted, and judicial interest allowed in accordance with the law.

## III.
## CONCLUSION

For the reasons stated above, the Motion for Default Judgment [doc. 154] will be **GRANTED** and judgment will be entered for plaintiff against defendants Jose Veracruz and Quality Operating Company d/b/a Bob's Containers, in solido, in the principal amount of **$336,019.48** plus costs and legal interest from the date of judicial demand until paid.

**THUS DONE AND SIGNED** in Chambers on the 24th day of August, 2026.



**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**